IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MILTON TOYA,

    Petitioner,

v.                                                                                                       CIV 17-0258 JCH/KBM

ALAN TOLEDO, Pueblo of Jemez Tribal Court Judge,
JOSEPH A. TOYA, Pueblo of Jemez Governor,
WILLIAM WAQUIE, Pueblo of Jemez 1st Lt. Governor, and
JONATHAN ROMERO, Pueblo of Jemez 2nd Lt. Governor,

    Respondents.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Petitioner Milton Toya's First Amended Petition for Writ of Habeas Corpus for Relief from a Tribal Court Conviction Pursuant to 25 U.S.C. § 1303 (*Doc. 10*), filed June 9, 2017. Petitioner asserts that he was denied the right to counsel and the right to request a trial by jury during the course of his tribal-court prosecution. *Id.* at 2. Respondents, on the other hand, contend that Petitioner has failed to exhaust his tribal remedies, leaving this Court without jurisdiction to resolve the Petition. *Doc. 13*.

The Honorable Judith C. Herrera referred this matter to me on August 18, 2017, to "conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." *Doc. 17*. Having reviewed the submissions of the parties and the relevant law, the Court finds that Petitioner has exhausted his tribal remedies or that resort to them would be futile. The Court furthermore concludes that there is merit to Petitioner's contentions, and therefore recommends that the Petition be granted.

**I.     BACKGROUND**

Petitioner is an enrolled member of the Pueblo of Jemez, a federally-recognized Indian Tribe. *Doc. 10* at 1. On January 25, 2017, Officer Jordan Shendo of the Jemez Pueblo Police Department allegedly discovered Petitioner passed out in the driver's seat of a pick-up truck within the exterior boundaries of the Jemez Indian Reservation. *Doc. 13-1* at 2. The truck was running. *Id.* Based on these events Petitioner was charged with four crimes: aggravated driving under the influence, liquor violation, driving on a revoked or suspended license, and open container. *Doc. 13-1* at 1.

Petitioner was arraigned on January 27, 2017, before the Governor and Lieutenant Governors of the Pueblo. *See Doc. 13-1* at 3; *Doc. 14* (Notice of Lodging – Exhibit 3). At the conclusion of his arraignment, Petitioner pled guilty to all of the charges and signed a document so stating. *Doc. 13-1* at 4. This document acknowledged that Petitioner was advised of the rights "as afforded to all defendants appearing before [Tribal] Court." *Id.* These rights are stated under Rule 3 of the "Pueblo of Jemez Rules of Criminal Procedure." As written, there is no mention of the right to a jury trial or an attorney in Rule 3. However, Petitioner was informed that he had a right to counsel at the arraignment. *Doc. 14* (Exhibit 3).[1]

Petitioner appeared for sentencing before the Honorable Alan Toledo, Tribal Court Judge, on February 8, 2017. *Doc. 13-1* at 6. Second Lieutenant Governor Jonathan Romero was present at the hearing. *Id.* Judge Toledo explained to Petitioner the fines and jail sentences he had the authority to impose, and asked if there were any

---

[1] It should be noted that Jemez Rule of Criminal Procedure 3.8 purports to confer upon defendants "[a]ll other rights and protections which have been conferred upon the defendant by the Indian Civil Rights Act of 1968, 25 U.S.C. § 1301 et. seq." However, the rights conferred by ICRA were not read to Petitioner at his arraignment.

2

recommendations made as to sentencing at the arraignment. *Doc. 14* (Exhibit 5). Petitioner then asked to change his plea to not guilty and proceed to a jury trial. *Id.* Petitioner also asked for an attorney. *Id.* Judge Toledo advised Petitioner that he should have asked for an attorney and a trial before he pled guilty, and he denied Petitioner's request to change his plea. *Id.*

Judge Toledo told Petitioner that if he was unhappy with the decision, he could appeal to the Governor's office. *Id.* Judge Toledo explained that "because [Petitioner had] already entered a guilty plea, all [he] can do is ask for reconsideration" or appeal the denial of his oral request to change his plea. *Id.* Judge Toledo explained that when there is an appeal, he "sends it to the governor's office, and if they want to hear it, or they can deny it; if it's denied then my decision stands." *Id.* Judge Toledo went on, "but if they want to consider his appeal, then he can send it to the council." *Id.* The Second Lieutenant Governor then explained this process to Petitioner in Towa.[2] *Id.*

Judge Toledo sentenced Petitioner to 180 days incarceration for the DUI and 90 days incarceration for the liquor violation, for a total of 270 days confinement. *Id.* Judge Toledo added, "But you can appeal my decision." *Id.*

Petitioner inquired about treatment in lieu of jail time. *Id.* Judge Toledo told him that it would be up to Behavioral Health and the probation office, which would give Petitioner an assessment. *Id.* Judge Toledo admitted that he did not know how this process worked. *Id.* Judge Toledo then remanded Petitioner back to custody to serve his sentence. *Id.* Judge Toledo also imposed fines in the amount of $500 for the DUI, and $100 each for the liquor violation, revoked license and open container charges, for

---

[2] Towa is the traditional, unwritten, language of the Pueblo. *See* Jemez Towa Language Program, *A Community Effort*, <http://www.jemezpueblo.org/Jemez_Language_Program.aspx>.

a total of $800. *Id.* Judge Toledo reminded Petitioner that some of his jail time could be suspended for treatment, but indicated that Petitioner would remain incarcerated during the pendency of any appeal. *Id.* Petitioner stated, "my decision is treatment." *Id.*

On May 2, 2017, Petitioner filed a *pro se* Motion to Reconsider Sentence wherein he apologized and asked to be placed on probation. *Doc. 13-1* at 7. Judge Toledo held a hearing on Petitioner's motion on May 18, 2017. *Doc. 13-1* at 8; *Doc. 14* (Exhibit 8). At the hearing Judge Toledo suspended the remainder of Petitioner's sentence and placed him on supervised probation. *Id.*; *see Doc. 13-1* at 9 (Release Conditions).

Meanwhile, Petitioner filed this Petition under 25 U.S.C. § 1303 of the Indian Civil Rights Act ("ICRA") on February 23, 2017. *Doc. 1*. His Amended Petition was filed on June 9, 2017, *Doc. 10*, and this Court ordered Respondents to answer on June 22, 2017. *See Doc. 11*. The Court's Order stated that "Respondents' answer shall advise, but is not limited to, whether the Petition[er] has exhausted his tribal court remedies as to the issues raised in the federal petition." *Id.* at 2. Respondents explain that their Answer is "limited to the Court's request" insofar as it only addresses exhaustion. *Doc. 13* at 5, n.1. However, the Court finds that it can resolve the Petition on the merits, and so addresses them. To the extent that Respondents may seek to supplement their argument as to the merits of Petitioner's claims they may do so by objecting to these findings, as set forth below.

## II. ANALYSIS

Pursuant to 25 U.S.C. § 1303, "[t]he privilege of the writ of habeas corpus shall be available to any person, in a Court of the United States, to test the legality of his

detention by order of an Indian tribe." *Id.*; *see Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 71 (1978). "Proceedings in compliance with ICRA, Congress determined, and we agree, sufficiently ensure the reliability of tribal-court convictions." *United States v. Bryant*, 136 S. Ct. 1954, 1966 (2016). Petitioner contends that his rights to counsel and a jury trial under ICRA were violated in this case. *See* Doc. 10 at 2. The Court agrees.

### A) Exhaustion

Before turning to the merits of Petitioner's claims, the Court must first address exhaustion, as "[w]hen presented with a petition for habeas relief pursuant to § 1303, the federal court must, in the first instance, determine whether the petitioner has exhausted his tribal remedies." *Steward v. Mescalero Apache Tribal Court*, CIV 15-1178 JB/SCY, 2016 WL 546840 at *2 (D.N.M. 2016) (citing *Dry v. CFR Court of Indian Offenses for the Choctaw Nation*, 168 F.3d 1207, 1209 (10th Cir. 1999)). "Under the tribal exhaustion rule, until petitioners have exhausted the remedies available to them in the tribal court system, it is premature for a federal court to consider any relief." *Valenzuela v. Silversmith*, 699 F.3d 1199, 1207 (10th Cir. 2012) (alterations and quoted authority omitted). "In order to satisfy the exhaustion requirement, a criminal defendant must pursue a direct appeal or show that such an appeal would have been futile." *Alvarez v. Lopez*, 835 F.3d 1024, 1027 (9th Cir. 2016). "[T]he aggrieved party must have actually sought a tribal remedy, not merely have alleged its futility." *White v. Pueblo of San Juan*, 728 F.2d 1307, 1312 (10th Cir. 1984).

However, "exhaustion of tribal court claims is not an inflexible requirement." *Selam v. Warm Springs Tribal Correctional Facility*, 134 F.3d 948, 953 (9th Cir. 1998). Rather,

> [a] balancing process is evident; that is weighing the need to preserve the cultural identity of the tribe by strengthening the authority of the tribal courts, against the need to immediately adjudicate alleged deprivations of individual rights.

*Necklace v. Tribal Court of Three Affiliated Tribes of Fort Berthold Reservation*, 554 F.2d 845, 846 (8th Cir. 1977) (quoted authority omitted); *accord Selam*, 134 F.3d at 953. Accordingly, the tribal exhaustion doctrine is subject to a narrow set of exceptions, one of which is showing that requiring resort to tribal remedies would be futile. *Steward*, 2016 WL 546840 at *2 (citing *Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 857 n.21 (1985)); *see also Valenzuela*, 699 F.3d at 1207. Courts have held that where there are informal remedies available to a petitioner, but none that are formal, the petitioner is not required to exhaust his tribal remedies. *See Necklace*, 554 F.2d at 846 (holding that in the absence of formal habeas procedures, the petitioner was not required to exhaust informal tribal remedies); *see also Wounded Knee v. Andera*, 416 F. Supp. 1236, 1239 (D.S.D. 1976) ("[i]f a tribal remedy in theory is non-existent in fact or at best inadequate, it might not need to be exhausted.") (citing *Schantz v. White Lightning*, 502 F.2d 67, 70 n.6 (8th Cir. 1974)).

Petitioner argues that he has exhausted his tribal remedies because "neither the Jemez Tribal court nor the Jemez Tribal Code actually provide for an appellate process or remedy or an appellate court. Thus, a trial before the Jemez Tribal Court is the final remedy." *See Doc. 10* at 2. Respondents counter that there were several tribal remedies available to Petitioner that he failed to invoke; specifically, Respondents point to the appeal and motion for reconsideration processes explained to Petitioner by Judge Toledo at sentencing. *See Doc. 13* at 5-8. Respondents further proffer the affidavit of Judge Toledo, wherein he avers that "[i]f a post-trial motion or a habeas corpus petition

6

is filed with the Jemez Tribal court seeking relief based on alleged violations of the ICRA, I would hear and decide any such motion as the presiding judge." *Doc. 13-1* at 15.

The problem for Respondents is that the remedies they speak of "are available in theory, but not in fact." *See Wounded Knee*, 416 F. Supp. at 1239. Respondents point to "custom and tradition" and contend that Petitioner's avenue for direct appeal was clear, as "it is the Governor and Tribal Council that make the final decisions." *Doc. 13* at 7. Respondents then point to Title I, Section 1-2-2, ¶ 2 of the Tribal Code and quote it for the proposition that "the Tribal Council, 'has jurisdiction to hear controversies between members, if a Tribal Council Court hearing is requested in accordance with traditional and customary practice or procedure.'" *Id.* (quoting *Doc. 13-1* at 13). However, Respondents misquote this portion of the Code, which in fact states that the Tribal Council Court "*may* have jurisdiction to hear controversies between members." *Doc. 13-1* at 13 (emphasis added).

Moreover, Respondents ignore Title I, Section 1-2-1 of the Code which explains that the Tribal Court is "responsible to hear all cases, civil and criminal, that occur or arise within the jurisdiction of the Pueblo of Jemez," and which took Petitioner's Plea and sentenced him. *See id.*; *see also Doc. 13-1* at 14 (Affidavit of Judge Toledo). Most importantly, Respondents ignore the provision of the Code that states: "[t]he decisions of the Tribal Court *are final and shall not be appealed to the Tribal Council Court.*" *Doc. 13-1* at 13. (emphasis added). In other words, the appellate process described by Respondents appears to be illusory at best, as it is unsupported by the Code itself.

7

It is made even more clear that Petitioner has no recourse in appealing to the Tribal Council or in requesting post-judgment relief from his criminal proceedings when examining Title II of the Code, the Pueblo of Jemez Rules of Criminal Procedure. The Rules provide, in pertinent part:

| | | |
|---|---|---|
| RULE 22 | NEW TRIAL (RESERVED) | |
| RULE 24 | RIGHT OF APPEAL; HOW TAKEN (RESERVED) | |
| RULE 25 | STAY OF JUDGMENT AND RELIEF PENDING REVIEW (RESERVED) | |

As other Judges in this District have observed, "[t]he Jemez Tribal Code contains no additional provisions, of any kind, for post-conviction relief." *Fragua v. Elwell*, 16cv1404 RB/WPL, *Doc. 12* (D.N.M. May 8, 2017) (Lynch, M.J.); *Fragua v. Casamento*, 16cv1405 RB/LF, *Doc. 18* (D.N.M. May 12, 2017) (Fashing, M.J.). The Court has independently examined Titles I (General Provisions), II (Rules of Criminal Procedure), III (Criminal Code) and XV (Rules of Civil Procedure) of the Tribal Code, and nowhere is there described the appellate process or habeas proceedings of which Respondents contend Petitioner should have availed himself. Thus, Respondents' reliance on *Valenzuela* is unavailing. *Compare* 699 F.3d at 1207 (cited by Respondents for the proposition that "ignorance of the law is not a valid excuse for failing to satisfy procedural requirements."). Therefore, as have other judges in this district, I recommend that the presiding judge determine that "[b]ecause the Jemez Tribal Code does not provide any avenue for seeking post-conviction relief, any attempt at pursuing post-conviction relief would have been futile." *See Casamento*, 16cv1405 RB/LF, *Doc. 18* at 4 (citing *Johnson v. Gila River Indian Community*, 174 F.3d 1032, 1036 (9th Cir. 1999); *Krempel v. Prairie Island Indian Community*, 125 F.3d 621, 623 (8th Cir. 1997)).

**B) Right to Counsel**

Under the ICRA, "[n]o Indian tribe in exercising powers of self-government shall . . . deny to any person in a criminal proceeding the right . . . at his own expense to have the assistance of counsel for his defense." 25 U.S.C. § 1302(a)(6). "The right to counsel under ICRA is not coextensive with the Sixth Amendment right." *Bryant*, 136 S. Ct. at 1962. Namely, "[i]f the sentence imposed is no greater than one year . . . the tribal court must allow a defendant only the opportunity to obtain counsel 'at his own expense.'" *Id.* (quoting Section 1302(a)(6)). As noted above, Petitioner was informed of this right at his arraignment. *See Doc. 14* (Exhibit 3). However, Petitioner contends that "neither the Jemez Tribal Court nor the Jemez Tribal Code actually allow or provide for State licensed attorneys to represent defendants before it. . . ." Doc. 10 at 2.

It appears that Petitioner is correct. Title I, Section 1-4-2 of the Jemez Tribal Code states that "Professional Attorneys shall not represent parties before the Tribal Court unless otherwise *permitted* by the Tribal Council." Thus, while Petitioner was informed of his "right" to counsel, that right was merely illusory.

As the Supreme Court recently discussed in *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017), both the right to select one's own attorney and the denial of an attorney to an indigent defendant are errors that are structural in nature, meaning that "the effects of the error are simply too hard to measure" or "the error always results in fundamental unfairness." *Id.* (citing *United States v. Gonzalez–Lopez*, 548 U.S. 140, 149 (2006); *Gideon v. Wainwright*, 372 U.S. 335, 343–45 (1963)). The Court finds that a similar rationale applies in this case, where Petitioner was denied the opportunity to

obtain counsel at his own expense as required by ICRA. Therefore, I recommend that Petitioner's convictions be reversed on this ground.

### C) Right to a Jury Trial

Under the ICRA, "[n]o Indian tribe in exercising powers of self-government shall . . . deny to any person accused of an offense punishable by imprisonment the right, upon request, to a trial by jury." 25 U.S.C. § 1302(a)(10). Petitioner asserts that "[n]either the Jemez Tribal Court nor the Jemez Tribal Code actually allow or provide for a right to a trial by jury. The right is in the books but it is reserved. It is not a present, existing right." *Doc. 10* at 4. Moreover, Petitioner avers that he "was never advised of his right to trial by jury or his right to request one by the governors at his arraignment." *Id.* at 5. Pointing to *Alvarez*, Petitioner correctly asserts that under this set of facts his Petition must be granted. *Id.*

In *Alvarez*, the Ninth Circuit stated that a tribal defendant's "right to 'fair treatment' includes the right to know that he would forfeit his right to a jury unless he affirmatively requested one," *Alvarez*, 835 F.3d at 1029, and that a Tribe "must inform defendants of the nature of their rights, including what must be done to invoke them." *Id.* Concluding that the Tribe had failed to do so by providing the defendant a "Defendant's Rights" form which said only "you have the right to a jury trial" but "didn't explain what Alvarez needed to do in order to invoke that right," *id.* at 1026, the court held "that the Tribe denied Alvarez his right under ICRA to be tried by a jury." *Id.* at 1030. And, "[b]ecause denial of the right to a jury trial is a structural error," the court reversed his conviction. *Id.*

10

Here, the Tribe failed to inform Petitioner of his right to a trial by jury at his request at his arraignment. And, when he requested one, the same was denied by Judge Toledo, who explained that Petitioner's only recourse was an uncertain and unestablished appellate process. Petitioner, as an unrepresented defendant, cannot be "expected to understand more about his rights than [the Tribal Court tells him]." *Id.* at 1029. Thus, because Petitioner was not informed of his right to trial by a jury, he could not be expected to request one. Moreover, even if Petitioner had requested a trial by jury, the Jemez Tribal Code has no mechanism for providing a jury trial. *See* Rule 16 of Pueblo of Jemez Rules of Criminal Procedure ("TRIAL BY JURY (RESERVED)"). Thus, I recommend that the Court conclude that the Pueblo of Jemez denied Petitioner his right under ICRA to request a trial by jury and to reverse his conviction on this alternative ground. *See Alvarez*, 835 F.3d at 1030 (citing *Sullivan v. Louisiana*, 508 U.S. 275, 281–82 (1993)); *see also Weaver*, 137 S. Ct. at 1907 (discussing structural error).

## III. CONCLUSION

The Court finds that Petitioner either exhausted his available Tribal remedies or that resort to them would be futile. The Court furthermore finds that Petitioner was denied his rights to obtain counsel at his expense and to a jury trial as required by ICRA.

Wherefore,

**IT IS HEREBY RECOMMENDED** that the Court grant Petitioner's First Amended Petition for Writ of Habeas Corpus for Relief from a Tribal Court Conviction Pursuant to 25 U.S.C. § 1303, and reverse Petitioner's conviction.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE